UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                              :

JUEL ROUNDTREE,

                        Plaintiff,

                              19-CV-2475 (JMF)

       -v-

                              OPINION AND ORDER

NYC, et al.,

                        Defendants.

-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Juel Roundtree, proceeding without counsel, brings this action against the City of New York (the "City"), New York City Health + Hospitals Corporation ("H+H"), Corizon Health, Inc. ("Corizon"),[1] "Medical Administrator Roberts," Dr. Arkady Cherchever, Dr. John Mullins, Dr. Jane San Jose, and several Jane and John Does (collectively, "Defendants"), alleging deliberate indifference to his serious medical needs, conspiracy to violate his constitutional rights, and retaliation, as well as state-law claims for malpractice, assault, and battery. *See* ECF No. 27 ("Am. Compl."). The City, H+H, Corizon, Dr. Cherchever, Dr. Mullins, and Dr. San Jose (collectively, "Moving Defendants") now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss. *See* ECF No. 56; *see also* ECF No. 93. For the reasons stated below, the motion is granted in part and denied in part.

---

[1]     Although Roundtree refers to this entity as "Corizon Medical," its correct name is apparently Corizon Health, Inc. *See, e.g.*, ECF No. 40, at 2.

**BACKGROUND**

This action arises out of dental care received by — or allegedly withheld from — Roundtree while he was detained at the George R. Vierno Center ("GRVC") on Rikers Island. He alleges that his medical care was unconstitutionally deficient because of a nearly nine-month delay between when he first complained of tooth pain and when he was given medical attention, a botched oral extraction that resulted in several injuries, and another nine-month delay before reconstructive surgery. In addition to the City, H+H, and Corizon, Roundtree names as a defendant Dr. Mullins, the dentist who performed the oral surgery. *See* Am. Compl. ¶¶ 1-3, 6. He also names two other GRVC medical professionals: Dr. Cherchever, the head doctor at GRVC, and Dr. San Jose, a GRVC "medical practitioner." *Id.* ¶¶ 5, 7. Lastly, Roundtree names as a Defendant "Roberts," a Department of Correction ("DOC") "medical administrat[or]," although Roberts's identity has yet to be ascertained. *Id.* ¶ 4; ECF No. 14.

**A. Factual History**

The following facts are, unless otherwise noted, taken from the Amended Complaint and are assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

On June 10, 2015, Roundtree — who was detained on Riker's Island — requested dental treatment at a GRVC medical clinic because he was experiencing pain caused by "a spike protruding from a lower right[-]side molar." Am. Compl. ¶ 17. He submitted the appropriate forms, but then "waited" nine months for an appointment, during which time he felt the spike "cutting into his cheek," causing him intense pain that required "emergency pain killers" from the clinic. *Id.* ¶¶ 17-18. Roundtree complained and requested medical attention from Dr. Mullins, Dr. Cherchever, and Administrator Roberts, but all ignored the requests. *Id.* ¶¶ 17-18.

Roundtree was not seen by Dr. Mullins until March 1, 2016; but medical staff falsified records to make it appear as if he had been seen in October 2015. *Id.* ¶¶ 18, 20.

When Dr. Mullins finally saw Roundtree on March 1, 2016, he told the Roundtree that "the spike would be filed off the molar (wisdom tooth)." *Id.* ¶ 20. But when it came time for the procedure itself, Dr. Mullins informed Roundtree that the tooth needed to be extracted altogether because it was "rotten," which Roundtree surmised was "a lie to allow an easier cheaper procedure[] and earn him a per tooth fee." *Id.* ¶¶ 20, 23. Dr. Mullins then proceeded to extract an adjacent tooth without Roundtree's consent. *Id.* ¶¶ 21, 23. The procedure began before the anesthetic took effect and involved "wrenching and yanking the tooth in a haphazard, brutal manner," causing Roundtree "excruciating" pain. *Id.* ¶ 21. During the process, Dr. Mullins's dental drill cut into Roundtree's gums and cheeks, and it also caused damage to an adjacent tooth. *Id.*

Although Dr. Mullins denied having damaged Roundtree's gums and tooth, he informed Roundtree that if the detainee's gums had been cut, he could "sew it up." *Id.* ¶ 22. In reality, Dr. Mullins left "gaping holes" in Roundtree's cheeks, gums, and the bottom of his mouth, which caused Roundtree to develop four infections, two of which were particularly "extreme." *Id.* ¶ 23. Later, Roundtree learned that Dr. Mullins had, in fact, broken Roundtree's jaw bone, causing "shards of bone [to] end up traveling" to various parts of his mouth. *Id.* ¶ 25. Roundtree sent these shards to his "common-law wife through the mail." *Id.* ¶ 26. Roundtree complained about this condition for months to no avail. *Id.* ¶ 25. Dr. San Jose filed false reports about Roundtree's injury and refused to treat him. *Id.* Additionally, Dr. San Jose repeatedly attempted to "over-ride" treatment ordered by other medical professionals. *Id.* Medical staff also lied to Roundtree when he was x-rayed. *Id.* ¶ 26. Roundtree visited Bellevue Hospital and was prescribed

medications and treatment by Bellevue staff, but GRVC staff refused to follow those prescriptions.  *Id.* ¶ 27.

Eventually, on January 20, 2017, after the Legal Aid Society's Prisoner Rights Project intervened, Roundtree underwent a reconstructive surgery.  *Id.* ¶ 30.  The surgery included removal of Roundtree's right-side molars and a piece of his jaw.  *Id.*  In the nine months between his extraction and the second surgery, Roundtree was repeatedly seen by medical professionals.  *Id.* ¶ 29.  But Dr. Cherchever, Dr. San Jose, and Administrator Roberts prevented him from receiving surgery during this period.  *Id.* ¶ 28.  After being transferred to Otis Bantum Correctional Facility ("OBCC"), also on Rikers Island, an OBCC dentist finally informed Roundtree of "the truth" about his broken jaw.  *Id.* ¶ 26.

Roundtree alleges that he has experienced consistent pain since 2015.  He has been unable to sleep on the right side of his face since mid-2015.  *Id.* ¶ 30.  Until 2018, the pain would cause him to wake up screaming at night.  *Id.*

**B.  Procedural History**

Roundtree's original complaint in this case was signed on March 11, 2019, and received by the Court on March 19, 2019.  *See* ECF No. 1.  He filed the operative Amended Complaint on November 27, 2019.  ECF No. 27.  A few months later, Moving Defendants filed a motion to dismiss the Amended Complaint pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* ECF Nos. 56-59.  In a Memorandum Opinion and Order entered on November 24, 2020, the Court concluded that Roundtree had failed to serve all Defendants other than the City (which had earlier waived service).  *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2020 WL 6891831, at *1-2 (S.D.N.Y. Nov. 24, 2020) (ECF No. 83).  In light of "Roundtree's *pro se* status and because Moving Defendants [had] received actual notice of this action and

[did] not suggest that any Defendant was prejudiced by [Roundtree's] improper service attempts," the Court declined to dismiss the case on that ground. *Id.* at *2. Instead, the Court asked Defendants to either waive service or be prepared to pay the cost of service to be effectuated by the U.S. Marshal Service ("USMS") on Roundtree's behalf. *Id.* at *3. Pending such service, the Court denied Moving Defendants' Rule 12(b)(6) motion without prejudice to renewal. *Id.* On January 22, 2021, Moving Defendants, having all been properly served (or having waived service or waived any challenge to service), *see* ECF Nos. 86, 89, 95,[2] filed a letter renewing their Rule 12(b)(6) motion, *see* ECF Nos. 93, 96.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.

---

[2] The USMS informed the Court that it attempted electronic service on Dr. San Jose on December 30, 2020, but it did not receive an acknowledgment from Dr. San Jose. Given that Dr. San Jose renewed her Rule 12(b)(6) motion without raising any objections to service, *see* ECF No. 93, she has waived any such objections.

If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, such as Roundtree's, the Court should interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and emphasis omitted). Notwithstanding the Court's obligation, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11-CV-8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]ro se complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

## DISCUSSION

Moving Defendants move to dismiss Roundtree's claims on the grounds that they are time-barred and fail the plausibility test. The Court will address each argument as necessary.

**A. Timeliness**

First, Moving Defendants contend that some of Roundtree's claims — namely (1) his deliberate indifference claim brought under 42 U.S.C. § 1983 against Dr. Mullins; (2) his conspiracy claim brought under 42 U.S.C. § 1983 against Dr. Mullins; (3) his medical and dental malpractice claims brought under New York State law against Dr. Mullins; and (4) his assault and battery claims brought under New York State law against the City, H+H, Corizon, Dr. Mullins, and Dr. Cherchever — are untimely. Significantly, the statute of limitations is an affirmative defense for which a defendant bears the burden of proof. *See, e.g.*, *Mosdos Chofetz*

*Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014). Accordingly, it is well established that "a pre-answer motion to dismiss on this ground may be granted *only* if it is clear on the face of the complaint that the statute of limitations has run." *Id.* (emphasis added) (internal quotation marks omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

Moving Defendants' argument for dismissal of Roundtree's Section 1983 claims fails for two reasons. First, the argument depends on a document other than the Amended Complaint — namely, Roundtree's medical records. *See* ECF No. 58 ("Defs.' Mem."), at 8; ECF No. 57-2. Thus, the Court cannot say that it "is clear on the face of the complaint that the statute of limitations has run." *Mosdos Chofetz Chaim*, 14 F. Supp. 3d at 209 (internal quotation marks omitted). Second, even if the Court could consider Roundtree's medical records, his Section 1983 claims would appear to be timely. The records indicate that Dr. Mullins performed oral surgery on Roundtree on March 10, 2016. ECF No. 57-2. Given that the statute of limitations is three years, *see, e.g.*, *Pearl v. City of Long Beach*, 296 F.3d 76, 79-80 (2d Cir. 2002), and March 10, 2019, was a Sunday, Roundtree had until March 11, 2019, to file his claims, *see* Fed. R. Civ. P. 6(a)(1)(C). Roundtree signed his original complaint on that very day, which — pursuant to the prison mailbox rule — is deemed to be the relevant date of filing. *See Nash v. Kressman*, No. 11-CV-7327 (LTS) (RLE), 2013 WL 6197087, at *4 (S.D.N.Y. Nov. 27, 2013); *see also Walker v. Jastremski*, 430 F.3d 560, 562-64 (2d Cir. 2005).

By contrast, Roundtree's state-law claims for malpractice, fraud, assault, and battery can be and are dismissed as untimely. Under New York law, Roundtree had ninety days from the date his claims accrued to file a notice of claim, and one year after that to commence an action

against the City, H+H, and its employees. *See* N.Y. Gen. Mun. Law § 50-i(1) (stating that these procedural requirements apply to actions "for personal injury . . . or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of [a] city . . . or of any . . . employee thereof"); *see also* N.Y. Gen. Constr. Law § 37-a (defining "[p]ersonal injury" to include "assault" and "battery"); *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (applying the notice-of-claim requirements to suits against "municipal corporations such as [H+H]"); *Taylor v. Mayone*, 626 F.2d 247, 252 (2d Cir. 1980) ("[Section 50-i] has been held applicable to actions against . . . individual . . . employees . . . whenever such individuals have a right to indemnity from the municipality."); *Dawkins v. Copeland*, No. 17-CV-9926 (ER), 2019 WL 1437049, at *9 (S.D.N.Y. Mar. 31, 2019) ("Claims for negligence and malpractice against the New York City Health and Hospitals Corporation and its employees must be brought within one year and ninety days."); *Middleton v. City of New York*, No. 04-CV-1304 (JFB) (LB), 2006 WL 1720400, at *16 (E.D.N.Y. June 19, 2006) (applying the time bar to state-law claims for fraud). Roundtree's claims arose, at the latest, by January 20, 2017, when he underwent reconstructive surgery. Thus, he had until April 20, 2018, to file his tort claims against the City and H+H. Although Roundtree alleges that he filed a notice of claim "around May 2016," Am. Compl. ¶ 64 — the sufficiency of which Moving Defendants do not contest — he did not file this action until March 11, 2019, and he provides no valid basis to conclude that the limitations period was tolled at any point.[3] Accordingly,

---

[3] Roundtree accuses Defendants of "fraudulent behavior, lie[s], [and] submi[ssion of] false reports," ECF No. 73 ("Pl.'s Opp'n"), at 3-4, but that does not provide a basis for tolling. As Roundtree himself alleges, he was aware of the relevant facts (at least those relevant to the first nine-month delay and the botched extraction) by "around May 2016," when he filed a notice of claim. *See* Am. Compl. ¶ 64. In addition, he was sufficiently aware of his injuries to make "complaints[] and grievances" to the City. *Id.* Accordingly, "Plaintiff has not provided a viable

8

considering only the face of the Amended Complaint, the Court concludes that Roundtree's state-law claims are time barred and they are dismissed.

**B. Federal Claims**

The Court turns, then, to Roundtree's federal-law claims, starting with his claims against the individual Defendants — Dr. Mullins, Dr. San Jose, and Dr. Cherchever — for deliberate indifference to his constitutional rights.

**1. Deliberate Indifference Claims Against the Individual Defendants**

Claims of unconstitutional conditions of confinement by pretrial detainees — which is what the Court assumes Roundtree was during the events giving rise to his claims — are governed by the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To successfully plead a claim, Roundtree must first plead that he suffered an objective deprivation of his constitutional rights such that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health" or safety, including "the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks omitted). In addition, he must plead that Defendants demonstrated deliberate indifference to these conditions. *Id.* at 32. To do so, he has to plead facts that show that Defendants "acted *intentionally* to impose the alleged condition, or *recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official[s] knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphases added); *see also Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (summary order).

---

reason for tolling the statute of limitations." *Todd v. New York City Health & Hosps. Corp.*, No. 16-CV-2124 (LDH) (LB), 2018 WL 10031378, at *3 (E.D.N.Y. Sept. 26, 2018).

9

Applying these standards, assuming the truth of the allegations in the Amended Complaint, and drawing all inferences in favor of Roundtree, the Court concludes that Roundtree's deliberate indifference claims against the individual Defendants cannot be dismissed. First, Roundtree states a claim with respect to the dental care that he received from Dr. Mullins in March 2016. Among other things, the facts alleged suggest that the damage Dr. Mullins caused during the oral surgery posed an unreasonable risk to Roundtree's health, leading to a broken jawbone and multiple cuts that became infected. Moreover, Dr. Mullins knew that he had cut Roundtree's gums and failed to treat that condition, recklessly failing to mitigate the obvious risk of infections. Moreover, the facts alleged strongly suggest that when he broke Roundtree's jawbone, Dr. Mullins recklessly failed to act with reasonable care. Asked pointedly by Roundtree whether he broke the adjacent tooth, Dr. Mullins denied having done so, placing Roundtree at risk of future harm (including that of infection) when he failed to immediately address the injuries; as a result, Roundtree suffered pain for nine months unnecessarily. In short, because the care provided was inadequate, and the risks were obvious, the Court finds that these allegations are sufficient to state a claim against Dr. Mullins.

Second, Roundtree also states a claim with respect to the delays in treatment of his condition — namely, the nine months leading up to the botched extraction and the nine months before his second reconstructive surgery.[4] With respect to the first period, Roundtree's allegation that he suffered intense pain requiring emergency treatment over the course of nine months, Am. Compl. ¶ 18, suggests that the delay was serious. This is all the more true for the second period of delay given that Dr. Mullins — although well aware of Roundtree's condition

---

[4] Any claims arising out of the first period — between June 10, 2015, and March 2016 — would ordinarily be time-barred, but the Court presumes for now that the continuing violation doctrine applies. *See Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).

— failed to mitigate the harm he had caused during the surgery by allowing Roundtree's injuries to go untreated. This avoidable failure resulted in four infections. *Id.* ¶ 23. Making matters worse, during the nine-month delay, Dr. Cherchever and Dr. San Jose refused to provide treatment despite recommendations from medical professionals at Bellevue Hospital. *Id.* ¶ 27. While disagreements over treatment ordinarily do not rise to the level of a constitutional tort, the fact that Roundtree eventually needed reconstructive surgery suggests that he required additional treatment and that Defendants were deliberately indifferent to his medical needs. Moreover, Roundtree's assertion that Dr. San Jose refused him pain medication and overrode the prescriptions recommended by outside hospitals amounts to more than mere negligence. *See, e.g.*, *Sims v. City of New York*, 788 F. App'x 62, 64 (2d Cir. 2019) (summary order) (noting that courts have found unconstitutional deliberate indifference, for example, when "officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years" (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (unpublished table decision))).

**C. Remaining Federal Claims**

By contrast, Roundtree's other federal claims fall short of the plausibility threshold. First, Roundtree brings claims against the City, H+H, and Corizon for their role in allegedly allowing the individual Defendants to violate his constitutional rights. Because H+H is a municipal corporation, *see, e.g.*, *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983), and Corizon is (for purposes of this case) the "functional equivalent of the municipality," *Bess v. City of New York*, No. 11-CV-7604 (TPG), 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013), to state such a claim, Roundtree would have to plausibly allege that the violation of his

rights resulted from a municipal policy, custom, or practice, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). He fails to do so. Indeed, he alleges little more than that H+H and Corizon allowed Dr. Mullins "free reign" in his practice for years, Am. Compl. ¶ 59, and that the City was aware of the constitutional deprivations, *id.* ¶ 64. Such thin and conclusory allegations do not pass muster. *See, e.g.*, *Nelson v. City of New York*, No. 18-CV-4636 (PAE), 2019 WL 3779420, at *16 (S.D.N.Y. Aug. 9, 2019) ("[T]he [complaint] purports to plead [the existence of an official policy], but its claims are conclusory. . . . [I]t does not substantiate any of [its] broad claims. As a result, the [complaint] fails adequately to allege . . . any official policy or custom."); *Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *7 (S.D.N.Y. Feb. 28, 2017) (dismissing a *Monell* claim where the plaintiff failed to "allege anything to support [her] conclusory assertions other than her isolated personal experiences, reports that are twenty-plus years old, and unproven allegations made in other lawsuits"); *Baines v. City of New York*, No. 10-CV-9545 (JMF), 2014 WL 1087973, at *3 (S.D.N.Y. Mar. 19, 2014) ("[A] plaintiff must allege facts — other than those giving rise to individual liability — supporting an inference that the municipality has an unconstitutional policy.").

Next, liberally construed, Roundtree's Amended Complaint brings claims for conspiracy and "discrimination" under both Sections 1983 and 1985(3). *See* Am. Compl. at 15-16. To state a claim for conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). To state a claim under Section 1985(3), meanwhile, a plaintiff must allege "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of

equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). The plaintiff must also allege that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks omitted). Significantly, vague and unsupported assertions of conspiracy — regardless of whether brought pursuant to Section 1983 or 1985(3) — do not suffice. *See, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Measured against these standards, Roundtree's claims under either statute fail as a matter of law because his allegations of conspiracy are vague and unsupported. The gravamen of his claims is that Defendants conspired "by agreeing during meetings . . . where they misrepresented facts [and] agreed to support each others['] reports." Am. Compl. ¶ 49. He also alleges in conclusory fashion that Defendants "collectively submitted falsified documents into the public record as evidenced through various litigations, grievances, and answer to FOIL [sic] requests." *Id.* ¶ 50. These bare allegations fail to state a conspiracy claim under either statute. *See, e.g.*, *Meisel v. Westchester Cnty.*, No. 18-CV-7202 (CS), 2020 WL 3472500, at *7 n.7 (S.D.N.Y. June 25, 2020) (dismissing a conspiracy claim where the plaintiff made "vague, boilerplate assertions" about how medical personnel "ha[d] conspired to hurt and damage [his] health" because the allegations were "conclusory and unsupported by facts" (internal quotation marks omitted)); *Liner v. Fischer*, No. 11-CV-6711 (PAC) (JLC), 2013 WL 4405539, at *6 (S.D.N.Y. Aug. 7, 2013) (noting that "bare statements that [d]efendants 'conspired'" to deny the plaintiff

13

medication and interfere with his medical care were "insufficient to state an actionable claim for conspiracy"); *Fox v. Fischer*, No. 04-CV-6718 (MBM), 2005 WL 1423580, at *4 (S.D.N.Y. June 14, 2005) (dismissing claims that the defendants conspired to deprive the plaintiff of medication and access to medical care as vague and conclusory because the plaintiff failed to state "when or how defendants formed the alleged conspiracy to switch his medication, nor d[id] he provide any details as to the execution of the conspiracy"), *aff'd*, 242 F. App'x 759 (2d Cir. 2007) (summary order); *Liner v. Goord*, 115 F. Supp. 2d 432, 435 (S.D.N.Y. 2000) (dismissing conspiracy claims that the defendants had "conspired to tamper [with] and destroy [plaintiff's] medical records" as "general, conclusory and unsupported by specific factual details" because the plaintiff "fail[ed] to state how defendants conspired to alter and delete the records and which records, if any, were destroyed"). And with respect to Section 1985(3), the facts alleged also fail to suggest that Defendants were motivated by "invidious discriminatory animus." *Cine SK8*, 507 F.3d at 791. To the contrary, Roundtree explicitly alleges that Defendants were motivated by financial interest in denying him appropriate care. Am. Compl. ¶¶ 20, 23.

Finally, Roundtree brings a claim for "Campaign of Harrassment [sic] (Retaliation)," Am Compl. at 16, which the Court construes (very liberally) to be a First Amendment retaliation claim. To state a First Amendment retaliation claim under Section 1983, a prisoner must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted).[5] Here, although Roundtree vaguely asserts that Defendants

---

[5] Notably, the Second Circuit has cautioned that courts should "approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Such

14

"chill[ed] his free speech," Am. Compl. ¶ 55, none of his allegations otherwise suggest that his First Amendment rights were implicated by Defendants' conduct. Nowhere does he allege, for example, any speech for which he claims to have been retaliated against, let alone any connection between that speech and the "adverse actions" he alleges. *Id.* Accordingly, his retaliation claim must be and is dismissed for failure to state a claim as well.

## CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss is GRANTED in part and DENIED in part. In particular, all of Roundtree's claims are dismissed except for his claims for inadequate care and deliberate indifference under Section 1983 as to the individual Defendants.

Further, the Court declines to grant Roundtree leave to amend his dismissed claims. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted). Here, the Court already granted Roundtree leave to amend his complaint in response to Moving Defendants' prior motion to dismiss and explicitly warned that Roundtree would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 60; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)). Roundtree did not amend in response to the Court's

---

claims are "prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

invitation.  In fact, he filed a letter requesting leave to file a second amended complaint, *see* ECF No. 81, but after the Court directed him to file a supplemental letter explaining what he proposed to amend, *see Roundtree*, 2020 WL 6891831, at *3, he filed another letter stating that he had decided to "forego[] an amending of [his] complaint," ECF No. 97.  Finally, and in any event, many of the problems with the dismissed claims are substantive, so amendment would be futile.  *See, e.g.*, *Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2020 WL 6891814, at *6 (S.D.N.Y. Nov. 24, 2020); *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *6 (S.D.N.Y. Dec. 13, 2018); *Croft v. AXA Equitable Life Ins. Co.*, No. 17-CV-9355 (JMF), 2018 WL 4007646, at *5 (S.D.N.Y. Aug. 22, 2018).

Unless and until the Court orders otherwise, the remaining Defendants shall file an answer to Roundtree's remaining claims within **three weeks of the date of this Opinion and Order**.  **By the same date**, Roundtree is hereby ORDERED to show cause in writing why his claims against Roberts and the various Jane and John Doe Defendants should not be dismissed for failure to serve within the timeframe set by Rule 4(m) of the Federal Rules of Civil Procedure.  By separate Order, the Court will schedule an initial pretrial conference to be held by telephone.  The Clerk of Court is directed to terminate the City, H+H, and Corizon as parties and to mail a copy of this Opinion and Order to Roundtree.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: April 28, 2021
New York, New York

JESSE M. FURMAN
United States District Judge